UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-426(DSD/SRN)

Sherrill B. Flora,

Plaintiff,

v.

**ORDER**

The McGraw-Hill Companies, a New York corporation, authorized to transact business in Minnesota,

Defendant.

David D. Himlie, Esq., Himlie Law Office, 3400 66th Street West, Suite 325, Edina, MN 55435, counsel for plaintiff.

Gregory I. Rasin, Esq., Steven D. Hurd, Esq. and Jackson, Lewis, Schnitzler & Krupman, 59 Maiden Lane, New York, NY 10038 and David J. Duddleston, Esq., Shelly B. Martin, Esq. and Jackson, Lewis, Schnitzler & Krupman, 150 Fifth Street Towers, Suite 2800, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on the motion of defendant the McGraw-Hill Companies for summary judgment. For the reasons stated, the court will grant defendant's motion and dismisses plaintiff's claims with prejudice.

## BACKGROUND

Plaintiff, Sherrill Flora ("Flora") worked as a publisher for a business acquired by the defendant, the McGraw-Hill Companies ("McGraw-Hill"). The acquired business had in place certain

FILED 5-14-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 5-14-02
Deputy Clerk's Initials

agreements designed to retain key employees like Flora during acquisition. In the event key employees lost their jobs or if their job duties were materially reduced following an acquisition, the agreements provided severance and retention payments. In the present case, Flora argues that she is entitled to receive those payments because her duties were materially reduced after the business was acquired by McGraw-Hill.

Flora has worked in the educational publishing business most of her life. Her family owned T.S. Dennison, a small educational publishing company. In 1994, T.S. Dennison was acquired by Educational Publishing Corporation ("EPC") which ultimately became the Instructional Fair Group ("IFG") of the Tribune Company. On September 5, 2000, McGraw-Hill acquired IFG from the Tribune Company. Flora began her employment at T.S. Dennison in 1984 as vice-president of product development, and when T.S. Dennison was acquired by EPC in 1994, Flora continued her employment as a director of product development. In 1998, Flora was given the title of vice-president of publishing for IFG and her duties remained unchanged.[1]

Prior to McGraw-Hill's acquisition, the Tribune Company notified certain key employees, including Flora, of a possible sale

---

[1] As director of product development and vice-president of publishing for the IFG, Flora oversaw the publication of educational materials and products for children, parents, and teachers under six different brands. In both positions, Flora reported to her brother, Baxter Brings, who was president and CEO of IFG.

to McGraw-Hill and offered certain transitional payments to induce these employees to remain. On April 5, 2000, the Tribune Company offered Flora the following payments:

> 1) A retention bonus if (a) Flora remained actively employed by McGraw-Hill for six months after the closing date or (b) if prior to the end of those six months, Flora terminated her employment because of a material reduction in her duties; and 2) severance if Flora terminated her employment with McGraw-Hill within twelve months of the closing date because of a material reduction in her duties.

On August 29, 2000, the Tribune Company sent Flora a second letter confirming the severance and retention payments, and McGraw-Hill's agreement to assume responsibility for them.

After McGraw-Hill acquired IFG on September 5, 2000, Flora became an employee of McGraw-Hill and received the first retention bonus payment for remaining actively employed through the closing date. On or about September 20, 2000, Flora's brother, Baxter Brings, resigned his position with McGraw-Hill when he was informed that he would no longer be the president of IFG. Immediately after Brings resigned, Flora was offered the position of publisher for the IFG product lines reporting directly to Mr. Vincent Douglas, the President of McGraw-Hill's Children's Publishing.[2]

Flora indicated that she was interested in the position and on September 28, 2000, met with the Children's Publishing managers of

---

[2] In his deposition testimony, Douglas testified that he informed Flora that her duties would remain unchanged in this position. (Douglas Dep., at 28-31.)

McGraw-Hill in Columbus, Ohio. During that meeting, Douglas distributed an organizational chart for Children's Publishing. On the chart, Flora was listed under "Publishing" and "Ed" (Education). Flora asserts Douglas then told her she would be handling products sold for use in classrooms. Flora never questioned nor sought clarification from Douglas or anyone else at McGraw-Hill regarding this position.

On October 2, 2000, Flora voluntarily resigned her employment by submitting a resignation letter to the Human Resources Department of McGraw-Hill. In her resignation letter, Flora asserted that the duties she had performed at IFG were "materially reduced" by McGraw-Hill. Consequently, Flora demanded the severance and retention bonus payments outlined in the April 5 and August 29, 2000 letters. McGraw-Hill denied her request and on October 20, 2000, Flora was replaced as publisher for the IFG product lines. Flora now brings the present lawsuit asserting that she is entitled to payment of the severance and retention bonus as outlined in the April 5 and August 29, 2000 letters. Defendant has moved for summary judgment asserting that plaintiff's claims fail as a matter of law in light of the undisputed facts. After careful review, the court concludes that defendant is entitled to summary judgment.

DISCUSSION

A. **Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. No "Material Reduction" Occurred**

The unambiguous terms of the retention and severance agreement specify that Flora is entitled to payment only if there is a "material reduction" in her duties. The key question then before the court is whether plaintiff has set forth sufficient evidence to raise a question of fact supporting her assertion that her duties at McGraw-Hill: (1) were materially reduced; or (2) would have been materially reduced in the future.

To constitute a material reduction in her duties under Minnesota law, a plaintiff must show that the duties of her position changed so much that she was constructively discharged. See Mair v. Southern Minnesota Broadcast Co., 226 Minn. 137, 140, 32 N.W.2d 177, 179 (1948) (if an employee is engaged to fill a particular position, any material reduction in rank, such as where the employer takes away the employee's authority and prestige, constitutes a breach of the employment agreement and is tantamount to discharge). See also Brock v. Mut. Reports, Inc., 397 A.2d 149, 151 (D.C. App. 1979) (significant reduction in rank constituted constructive discharge); Hayes v. Resource Control, Inc., 365 A.2d 399, 400 (Conn. 1976)("[a]ny unjustified reduction of the rank or a material change in the duties of an employee who is engaged to

fill a particular position, not within the contemplation of the contract, constitutes a breach of contract."). Flora may thus establish that there was a material reduction in her duties by showing that her employer took away her authority and prestige or that there was a significant reduction in her rank.

After carefully reviewing the undisputed evidence, the court believes plaintiff fails to set forth any evidence supporting her assertion that her duties were or would have been materially reduced. Put differently, since no reasonable jury could find, in light of the undisputed record, that defendant took away any of plaintiff's authority or prestige or that there was a significant reduction in her rank, or would be in the future, defendant is entitled to summary judgment. See Rubin v. Household Commercial Fin. Servs., Inc., 746 N.E.2d 1018, 1028 (Mass. App. Ct. 2001) (corporate officer not constructively discharged when some of his authority was limited, but also where he kept his title, office, salary and benefits). Plaintiff concedes that there was no change in her salary, benefits or other terms and conditions of her employment at McGraw-Hill. (See Flora Dep. pp. 269-270, 277.) She also agrees that her new position at McGraw-Hill would not have been a demotion, she would have had the same number of people directly reporting to her, and she would not have lost any prestige. (See id., pp. 270-271, 276-279.)[3] The court sees no

[3] Apparently, Flores' main basis for contending that her (continued...)

basis for her assertion of a material reduction in light of the undisputed record and must grant defendant summary judgment.

Furthermore, plaintiff fails to provide any evidence or raise a question of fact regarding whether her duties would have been materially reduced in the future. Affidavits and sworn testimony, not based on personal knowledge, but on speculation and conjecture, are insufficient to defeat summary judgment. See Flannery v. Transworld Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998). The specific facts set forth by a party opposing summary judgment must be just that, facts, not speculation. Fed. Deposit Corp. v. Oaklawn, 959 F.2d 170, 175 (10th Cir. 1992). Here, plaintiff sets forth insufficient evidence to support her assertion that her duties at McGraw-Hill would have been materially reduced.

She asserts that there would have been a material reduction in her duties because the product lines that she would have been responsible for would have been reduced in number.[4] The only

---

[3](...continued) duties were materially reduced arises from her assertion that the organizational chart that she received during the September 28, 2000 meeting in Columbus, Ohio had an "empty box" between her name and the name of Douglas and from this chart she concluded that she would not be directly reporting to Douglas but to some other person. The record, however, indicates that prior to this meeting Flora was specifically informed that she would report directly to Douglas, and Flora admits that she was never specifically told that she would report to someone else. (See Flora Dep., p. 244, 277-278.) Moreover, she never sought clarification of her interpretation of the organizational chart. (See id., pp. 239-240, 285-286.)

[4] The court also concurs with defendant's assertion that (continued...)

evidence supporting this assertion, however, mainly consists of her own testimony and the affidavit and deposition testimony of her brother, the former president of IFG, and a friend, Jennifer Giordano, the former vice-president of sales and marketing at the IFG. Neither of these individuals are in a position to have personal knowledge concerning what duties Flora would have had at McGraw-Hill had she not resigned.[5] To the contrary, Douglas testified that he expressly informed Flora, prior to the September 28, 2000 meeting, that she would be responsible for the same products and brands that she had at IFG. (See Douglas Dep. at 30-35.) The court sees no other evidence set forth by plaintiff that credibly controverts this testimony.

---

[4](...continued)
since Flora's position at IFG entailed far more than just administering "final authority" for publishing materials, any slight change in that authority, as demonstrated by the undisputed record, would not have constituted a material reduction in her duties. (See Def.'s Reply Mem. at 3-6.)

[5] Flora further conceded in her deposition testimony that: (1) she never sought clarification from anyone at McGraw-Hill concerning the organizational chart, to whom she would report, what her duties would be, or any other issue she had with her role at McGraw-Hill prior to her resignation; (2) she does not know how the product development process works in practice at McGraw; (3) she never attempted to publish any product at McGraw-Hill, and therefore, does not know what her role or ability to develop product at McGraw-Hill would have been; (4) she never completed a cycle of publishing, brainstorming, budgeting at McGraw-Hill; and (5) she does not know the size or the publishing operation for which she would have been responsible, the number of brands or products she would have handled, whether her requests for publication would have been granted or the actual practice involved in obtaining "permission to print" at McGraw-Hill. (See Flora Dep. at 239-40, 285-286, 209, 269, 255, and 274-275.)

Put differently, Flora's conclusory assertion that her duties were to be materially reduced is based on her own conjecture about what her role would have been had she stayed at McGraw-Hill. Absent other evidence showing that her duties would have been materially reduced had she stayed at McGraw-Hill, the court believes that defendant is entitled to summary judgment.

**C. No Claims Under Minn. Stat. § 181.14**

Lastly, plaintiff asserts a claim under Minn. Stat. § 181.14. Minnesota Statute § 181.14 requires an employer to promptly pay wages or commissions *earned* and unpaid when an employee resigns. Payment is due on the first regularly scheduled payday following the employee's final day of employment. Id. If demand is made, the wages or commissions become due immediately upon the demand and must be paid within 24 hours of the demand or a penalty may be imposed. Id. The penalty is an amount equal to the employee's average daily earnings for each day the amount is unpaid after the demand for up to 15 days. Id. The purpose of Minn. Stat. § 181.14 "is to ensure that employees are promptly paid wages that are due for *work performed* regardless of how or why the relationship is terminated." O'Kronglis v. Broberg, 456 N.W.2d 468, 470 (Minn. Ct. App. 1990) (emphasis added). Minnesota law interprets the term "earned wages" narrowly. See, e.g., Meyer v. Mason Publ. Co., 372 N.W.2d 403, 404-05 (Minn. Ct. App. 1985) (wages must be "actually earned and unpaid").

Here, the court cannot conclude that the disputed retention and severance pay can represent "earned wages under the statute." The retention and severance payments are not for actual work performed but are rather payments under a contract for obligations that plaintiff has failed to satisfy.

Accordingly, plaintiff's lawsuit to collect severance pay does not constitute a demand for wages and Minn. Stat. § 181.14 is inapplicable.[6] The court also concludes that plaintiff's claims for statutory penalties and attorney's fees under Minn. Stat. § 181.171 is without merit. Defendant is entitled to summary judgment on these claims.[7]

---

[6] The court finds no instances of where a Minnesota court has held severance pay to be "wages" under Minn. Stat. § 181.14. To the contrary, the Minnesota Supreme Court has held, in a somewhat related context, that severance pay is a contractual benefit rather than compensation. See Childers v. Honeywell, Inc., 505 N.W.2d 611, 612 (Minn. 1993) (holding that severance pay, not being compensation similar to weekly wages, could not be used to offset weekly wage benefits available for workers' compensation injury). The Minnesota Court of Appeals has also applied a dictionary definition of "severance pay" in an unemployment case stating that severance pay means "a sum of money usually based on length of employment for which an employee is eligible upon termination." Carlson v. Augsburg College, 604 N.W.2d 392, 394-395 (Minn. Ct. App. 2000).

[7] Plaintiff also initially asserted that defendant is promissorily estopped from refusing to pay the severance and retention bonus payments under the April 5 and August 29, 2000 letters. In her complaint, she alleged defendant promised severance and retention benefits and in reliance on those promises, she remained in the employ of the Tribune Company and thereafter McGraw-Hill. (See Complaint ¶ 30-31.) Plaintiff, however, now concedes that promissory estoppel is inappropriate in this case and has withdrawn the claim of promissory estoppel and voluntarily dismissed Count III of the Complaint. (See Pl.'s Mem. at 16.)

**CONCLUSION**

Since there are no material facts in dispute and the court concludes that plaintiff has failed to demonstrate that she is entitled to the money as outlined by defendant's two letters, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment is granted and all of plaintiff's claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 13, 2002

David S. Doty, Judge
United States District Court

[7](...continued)
she remained in the employ of the Tribune Company and thereafter McGraw-Hill. (See Complaint ¶ 30-31.) Plaintiff, however, now concedes that promissory estoppel is inappropriate in this case and has withdrawn the claim of promissory estoppel and voluntarily dismissed Count III of the Complaint. (See Pl.'s Mem. at 16.)

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*